# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| CHAD RHODES,<br><br>            Petitioner,<br><br>    v.<br><br>ROBERT KIRKLAND, Warden,<br>and THE ATTORNEY GENERAL OF THE<br>STATE OF CALIFORNIA<br><br>            Respondents. | Case Number C 06-5252 JF<br><br>ORDER[1] DENYING PETITION FOR<br>WRIT OF HABEAS CORPUS |

Petitioner Chad Rhodes ("Rhodes") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons discussed below, the petition will be denied.

## I. BACKGROUND

On January 9, 1999, Rhodes and several others were driving in and around Oakland, California in two vehicles, a Nissan Maxima ("the Nissan") and a Chevrolet Caprice ("the Chevrolet"). The occupants of both vehicles had been drinking heavily and were in possession of firearms. Rhodes was in the Chevrolet with three others and was armed with an assault rifle.

---

[1] This disposition is not designated for publication in the official reports.

At about midnight, a police car with its lights on sped around the Chevrolet in pursuit of the Nissan. The occupants of the Chevrolet lost sight of both the Nissan and the police car. During the chase, one of the passengers of the Nissan threw a shotgun from the window into the fast lane of traffic near the 38th Avenue exit on I-580. The Nissan eventually crashed through a fence into a park, where police officers arrested its occupants. A team of officers and evidence technicians arrived at the scene to seize the shotgun and collect evidence. Officer James Williams ("Officer Williams") was a member of this team.

While the collection of evidence continued, the Chevrolet was parked above the freeway at an overpass. Rhodes left the car and fired the assault rifle at the officers below, killing Officer Williams and injuring another person. In a subsequent interview with police, Rhodes stated that he fired at the police vehicles and at a wall behind the vehicles in an attempt to frighten the police away from his friends in the Nissan. He claimed that he did not intend to hurt anyone. Rhodes claims to have poor vision, particularly at night.

Rhodes was charged in count one with murder (Cal. Pen. Code, § 187),[2] with personal use of a semiautomatic firearm (§ 12022.5(b)), and personal infliction of great bodily injury upon a peace officer with a firearm (§§ 12022.53(d), 12022.5(b)), along with the special circumstance and aggravating factor that the victim was a peace officer engaged in the performance of his duties (§ 190(a) & (c)(4)); in count two with attempted murder (§§ 187, 664), with personal use of a firearm (§§ 12022.5(b), 12022.53(d)); in count three with assault with a deadly weapon upon a police officer (§ 245(b)), with personal use of a firearm (§ 12022.5(b)); and in count four with assault with a deadly weapon upon a peace officer (§ 245(d)(2)), with personal use of a firearm (§ 12022.53(c)).

After fifty-three days of trial but prior to the commencement of jury deliberations, Rhodes entered a negotiated guilty plea to one count of the lesser included offense of second-degree murder with personal use of a firearm, and the lesser included offense of assault with a firearm

___

[2] All further statutory references are to the California Penal Code unless otherwise indicated.

2

upon a police officer.[3]  He was sentenced to life without possibility of parole.

**Direct Appeal:**

On May 30, 2003, Rhodes filed a timely notice of appeal, claiming a sentencing error. On February 18, 2005, the California Court of Appeal, First Appellate District, Division One, affirmed the judgment in a published opinion.  The court concluded that Rhodes' sentence did not offend equal protection principles or constitute cruel and unusual punishment.

On June 8, 2005, the California Supreme Court denied Rhodes' petition for review.  On February 22, 2006, the California Supreme Court denied Rhodes' petition for writ of habeas corpus.

**Federal Habeas Petition:**

On August 25, 2006, Rhodes filed the instant habeas petition.  Rhodes claims that his confinement violates his rights under the Equal Protection Clause of the Fourteenth Amendment. In addition, he claims that his sentence of life without the possibility of parole violates his Due Process rights under the Fifth Amendment and constitutes cruel and unusual punishment in violation of the Eighth Amendment.

## II.  STANDARD OF REVIEW

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244, *et seq.*, which applies to all petitions for writ of habeas corpus filed after its enactment. *Lindh v. Murphy*, 521 U.S. 320 (1997).  This petition was filed after the effective date of AEDPA and therefore is subject to its provisions.

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. *Williams v. Taylor*, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus will not be

---

[3] In exchange for the guilty plea, the prosecution dismissed counts three and four.

granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003); *Williams v. Taylor*, 120 S.Ct. 1495, 1523 (2000). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, 538 U.S. at 74 (citations omitted). "Rather, that application must be objectively unreasonable." *Id.* (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983), direct review of a criminal conviction is the primary method for a defendant to challenge that conviction. *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993). In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Purkett v. Elem*, 514 U.S. 765 (1995).

### III. DISCUSSION

**A. Sentence of Life Without Possibility of Parole Does Not Violate Equal Protection or Due Process of Law (Ground 1)**

Rhodes challenges the constitutionality of California's homicide sentencing scheme that punishes second-degree murder of a peace officer "while engaged in the performance of his or her duties" with a sentence of life without possibility of parole upon an additional finding of specified facts enumerated under § 190(c). He states that the "more serious offense" of "first degree murder of a non-peace officer or of a peace officer not in the performance of his or her duties and without other 'special circumstances'" imposes a lesser sentence of twenty five years to life. Rhodes asserts that he was charged with first-degree premeditated murder but, upon entry of a guilty plea to the "less serious" second-degree murder offense with personal use of a firearm, was "given greater punishment than he would have received if he had been found guilty of the

4

more serious one."[4] He therefore argues that his sentence was arbitrary and violated constitutional guarantees of due process and equal protection.

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. *Plyler v. Doe*, 457 U.S. 202, 216 (1982). Generally, state action or other official action is presumed to be valid and will be sustained if the classification drawn by the action is rationally related to a legitimate state interest. *United States Railroad Retirement Board v. Fritz*, 449 U.S. 166, 174-175 (1980). When social legislation is at issue, the Equal Protection Clause allows the States wide latitude. *Id.* at 174.

The general rule gives way, however, when an action is predicated upon suspect classifications (i.e., race, alienage, or national origin). Actions grounded in such considerations are subjected to strict scrutiny analysis and will be sustained only if they are narrowly tailored to serve a compelling state interest. *Graham v. Richardson*, 403 U.S. 365 (1971). Similar oversight by the courts is due when state laws impinge on personal rights protected by the Constitution. *Kramer v. Union Free School District No. 15*, 395 U.S. 621 (1969).

Where individuals in the group affected by an action have distinguishing characteristics relevant to interests the State has the authority to implement, courts have been reluctant to scrutinize choices as to whether, how, and to what extent those interest should be pursued. *City of Cleburn v. Cleburn Living Center*, 47 U.S. 432, 441-442 (1985). In such cases, the Equal Protection Clause requires only that a rational means be implemented to serve a legitimate end. *Id.* at 442.

The appellate court's decision on direct appeal that Rhodes' constitutional rights were not violated relied upon general principles applicable to equal protection and due process under both the United States and California Constitutions.

---

[4] One of the specified facts "charged and found true" that justifies a sentence of life without the possibility of parole under § 190(c) is, "(4) The defendant personally used a firearm in the commission of the offense, in violation of § 12022.5."

Rhodes fails to demonstrate that two similarly situated groups have been treated in an unequal manner by the sentencing laws.  His claim of denial of equal protection is predicated upon the imposition of different levels of punishment upon defendants convicted of distinctly classified homicides.  The particular type of second-degree murder committed by Rhodes was accorded different treatment by the Legislature based upon its unique nature.  The sentence of life without possibility of parole requires not only the second-degree murder of a peace officer in the performance of his or her duties, but also the presence of at least one of the four additional enumerated facts.  Rhodes thus is not in a group that is similarly situated to those convicted of other homicide offenses.  "'[N]either the Fourteenth Amendment of the Constitution of the United States nor the California Constitution [citations] precludes classification by the Legislature or requires uniform operation of the law with respect to persons who are different.'"  *People v. Applin*, 40 Cal.App.4th 404, 409 (1995).

Rhodes asserts that any first-degree murder requires a "more culpable" mental state of deliberation and premeditation, and thus necessarily is a "more blameworthy offense" than the second-degree murder offense of which he was convicted.  He also asserts that his "punishment for the lower degree of murder is just as severe" as for a conviction "of the higher degree of the crime" with a finding of a preponderance of mitigating circumstances, and more severe than if he had been "found guilty of first degree murder without a special circumstance."  He argues that "punishing the second degree murder of a peace officer with an 'aggravating factor' more harshly than the ordinary first degree murder is irrational and arbitrary."

Rhodes is not subject to the sentence of life without possibility of parole based solely upon a second-degree murder committed without premeditation.  The additional aggravating circumstances of his conviction were prerequisites to the sentence he received.  The Legislature has determined in many contexts that in order to deter the use of firearms and save lives firearm offenses should be treated more harshly than the same crimes committed by other means.  The imposition of severe punishment upon offenders who kill or injure peace officers promotes the societal interest of protecting peace officers engaged in the performance of their duties.  The sentence received by Rhodes was no different from that potentially applicable to all persons in

6

California who are convicted of second-degree murder of a peace officer with a firearm. The state appellate court's rejection was not unreasonable and did not "contradict[] the governing law set forth in [Supreme Court] cases." *Musladin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009).

**B.    The Sentence of Life Without Possibility of Parole Does Not Constitute Cruel and Unusual Punishment (Ground 2)**

Rhodes argues that his sentence was "disproportional in [] this case, in violation of the prohibition of cruel and unusual punishment by the United States and California Constitutions." He refers to "substantial mitigating factors" related to both the offense and his background that "on the facts of this particular case" make the sentence "disproportionate to the crime."

The Eighth Amendment of the United States Constitution prohibits "[e]xcessive" sanctions. It provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S.C.A. Const. Amend. 8. It is a precept of justice that punishment for crime should be graduated and proportioned to the offense. *See Harmelin v. Michigan*, 501 U.S. 957, 997-998 (1991). Thus, even though certain punishment may not be cruel or unusual in the abstract, it may nevertheless be excessively disproportionate to the crime. *See Robinson v California*, 370 U.S. 660, 666-667 (1962).

The state appellate court applied established California law that closely parallels the federal standard as to what constitutes cruel and unusual punishment. The court conducted a tripartite test that: (1) examined the nature of the offense and the offender with particular regard to the degree of danger both present to society; (2) compared the challenged penalty to those imposed in the same jurisdiction; and (3) compared the challenged penalty to those imposed for the same offense in other jurisdictions. In undertaking this three-part analysis, the court considered the "totality of the circumstances" surrounding the commission of the offense. It concluded that although some mitigating factors were present in the record, the extreme seriousness of Rhodes' offense negated Rhodes' claim of cruel and unusual punishment.

In the federal context, the Supreme Court has not defined the precise contours of the line between disproportionality that is constitutionally permissible and disproportionality that is gross and unconstitutional. *See Lockyer v. Andrade*, 538 U.S. 63, 73 (2003). Accordingly, it is

7

difficult to demonstrate that a state appellate court's decision applied a legal standard that is contrary to established United States Supreme Court precedent. Rhodes has not made the requisite showing here. Rhodes opened fire with an assault rifle at a group of police officers and evidence technicians engaged in the entirely non-threatening task of collecting evidence on the freeway below him. The unprovoked shooting was at best criminally negligent, or at worst, committed with the sinister objective of killing a peace officer. Rhodes acted on his own, apparently without encouragement or assistance from anyone else. The impact of the indiscriminate shooting was to leave one officer dead and another wounded. Rhodes has made no showing that the penalty he received is far in excess of that imposed in California for less serious crimes or for the same offense in other jurisdictions. Under the egregious circumstances of this case, the penalty of life in prison without the possibility of parole is not so disproportionate to the gravity of the offense and Rhodes' degree of culpability as to constitute cruel and unusual punishment.

## IV. ORDER

The petition for writ of habeas corpus is DENIED.

DATED:        January 19, 2010

_____
JEREMY FOGEL
United States District Judge